### In re SLATTERY & CO., Inc.

#### Petition of KOHLMAN.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

#### No. 21.

**Bankruptcy �köö484—Court without authority to allow receiver additional compensation.**

Receiver in bankruptcy of a corporation engaged in the business of investment securities, a large mail order business in the purchase, sale, and investment of securities, with about 3,500 customers, most of whom were purchasing securities in small lots on the partial payment plan, securities being held by the bankrupt as security for the purchase price, payments on which were being made monthly, was not entitled to additional compensation under Bankruptcy Act, § 2, subd. 5 (Comp. St. § 9586), and section 48e (Comp. St. § 9632), for continuing "the" business, as the business was not of a character susceptible of being conducted by a receiver.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the estate of Slattery & Co., Inc., bankrupt. Petition by Francis L. Kohlman, as receiver, etc., to revise an order denying allowance of double commissions. Order affirmed.

The following is the opinion of KNOX, District Judge, in the court below:

Under section 2, clause 5, of the Bankruptcy Act (Comp. St. § 9586), the court may "authorize the business of bankrupts to be conducted for limited

periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates, and allow such officers additional compensation for such services, as provided in section forty-eight of" the act.

The bankrupt in this case was a large stock brokerage house, and the assets which came into the hands of the receiver were of a value upwards of $800.000. As the receiver said in his application for authority to carry on the business, the execution of his trust entailed diverse activities looking toward a realization upon the assets. He was required to give orders to brokers to sell securities in their possession, in order that balances might be struck and moneys turned over to him. Stock certificates had to be carried through transfer, investigation was had as to the condition of various security markets, and, in certain instances, markets for securities had to be made and maintained, in order that some of the assets might be sold with advantage to the estate. That no little judgment and business discretion was demanded of the receiver is unquestionably true, and the detail of it all necessitated his close attention.

Upon a recital of such facts, the receiver presented his petition, dated December 30, 1922, to the court, requesting that he be granted "authority to carry on the bankrupt's business herein nunc pro tunc as of the date of the filing of the petition in bankruptcy herein" (on or about April 4, 1922), and to carry on such business nunc pro tunc as of the date of the qualification of petitioner as trustee. The judge before whom the petition came looked with favor upon the application, and an order such as was prayed for was signed upon December 30, 1922.

On January 22, 1923 the receiver's accounts came on to be passed before the referee in bankruptcy. They disclose the performance of many services, accompanied with great detail, upon the part of the receiver and his attorneys. For what was done and accomplished the persons concerned deserve, not only credit, but substantial compensation as well. Acting upon the practice ordinarily pursued where an order to continue business has issued, the referee has recomended that the receiver be allowed double commissions upon the cash and securities which came into his hands. Such double commissions amount to $18,050.18.

To such allowance no objection has been made, and from that standpoint there is no obligation upon me to question the propriety of the referee's action. However, the report is before me for confirmation, and before my approval can be had the report must commend itself, not alone to my discretion, but also to my view of the law involved therein. Because I have serious doubt as to the legality of the allowance to the receiver of double commissions, I raise that question of my own motion. By so doing, and as a result of the action I am about to take, in this particular case, I hope to obtain an authoritative ruling by the Circuit Court of Appeals upon whether the business of this bankrupt was, in reality, continued within the purview of the act, and if for what the receiver did he is entitled to double commissions.

The matter is one of considerable importance, in that there are now pending in the court numerous administrations of a similar character, in which the question here presented is bound to arise. For such reason, I invite a review of the order I shall enter in this proceeding. My doubts, amounting to little short of conviction, upon the subject involved, arise from the following considerations:

That the business of the bankrupt, so far as the buying and selling of securities for the account of customers was concerned, was never carried on by the receiver. His activities were directed to the preservation of the assets, and in reducing some of them into cash. The mere incident that the assets largely consisted of stocks and bonds, which, by reason of their hypothecation as security for loans of the bankrupts, necessitated careful handling and a method of procedure differing from that usually employed in bringing about liquidation, does not differentiate the case from a liquidation in which the assets are disposed of in ordinary course.

The leave to continue business nunc pro tunc was not granted "in order that the fruits of valuable contracts" might become available or "that grants may be earned or franchises preserved." Black on Bankruptcy, § 302. Neither was there need to preserve the good will, if such there was. The matter

294 F.—40

was, as I see it, one of liquidation, pure and simple and 'in my judgment the receiver for his services should have but a single commission.

For the purposes of review, I may state that, if I considered the award of double commission to rest within my discretion, the same would be allowed. The basis of my decision is that the business of the bankrupt was not, in fact, "continued," within the meaning of the term as it is used in the Bankruptcy Act.

In other respects the report of the referee is confirmed. An appropriate order may be submitted. February 23, 1923.

Elkus & Gleason, of New York City (W. L. Ball, Burgess Osterhout, and Wesley S. Sawyer, all of New York City, of counsel), for petitioner.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The petition to revise brings up for the first time in this court the question as to whether a receiver of a firm engaged in the business of investment securities, such as that in this case, was conducting the business of the bankrupt, so as to authorize, in the discretion of the District Court, the allowance of double commissions. The facts are summarized in the opinion of Judge Knox, set forth above, and from that it appears that double commissions would have been allowed, if the District Court had been convinced that it had power to make such award.

An examination of the uncontroverted facts disclosed by the receiver's report and account shows that he was confronted with many difficult questions, which demanded the exercise of judgment and a knowledge of the many problems inherent in the administration of an estate of this character. Probably no branch of bankruptcy administration presents more troublesome questions of law and administration than does the insolvency of a stock brokerage or investment concern. In re Wilson (D. C.) 252 Fed. 631, and In re Toole & Henry (C. C. A.) 274 Fed. 337, 24 A. L. R. 470, are only two out of many cases which are illustrative of the complexities of such bankruptcies.

We are here concerned, however, not with the merit of the services rendered, but with the construction of the relevant statute. In section 2, subdivision 5, of the Bankruptcy Law (Comp. St. § 9586), it is provided that courts of bankruptcy are empowered to "authorize *the* business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates, and allow such officers additional compensation for such services, as provided in section forty-eight of this act." Section 48e (Comp. St. § 9632) provides:

"Where *the* business is conducted by trustees, marshals, or receivers, as provided in clause five of section two of this act, the court may allow such officers additional compensation for such services by way of commissions upon the moneys disbursed or turned over to any person, including lien holders, by them, and, in cases of receivers or marshals, also upon the moneys turned over by them or afterwards realized by the trustees from property turned over in kind by them to the trustees. * * * *"

We have italicized the word *"the"* because of its significance. It is argued, not without merit, that where liquidation involves something more than mere sale and collection of assets, as in the case at bar, ad-

ministration of such an estate involves business judgment, and hence amounts to conducting business.

The legislative intent, however, seems to have been that "the" business of the bankrupt was to be conducted when duly authorized before more than a single commission was allowable. In other words, the receiver or trustee, as the case may be, must conduct "the" business which the bankrupt conducted. That business is described in the record as follows:

"The bankrupt above named, a New York corporation, was engaged in the business of investment securities. * * * It appeared that the bankrupt conducted a large mail order business in the purchase, sale and investment of securities. It had about 3,500 customers listed on its books, and most of these were purchasing securities in small lots on the 'partial payment plan.' Various customers had made substantial payments on such securities which were being held by the bankrupt for them as security for the purchase price, payments on which were being made monthly. * * * "

The receiver did not and could not continue the business above described. It is plain that he could not buy new securities, nor invest the securities which came into his hands, and, of necessity, the "partial payment plan" could not be continued by the receiver in the manner conducted by a going concern. The provision as to additional compensation to receivers and trustees for continuing the business of the bankrupt was added by the amendment of June 25, 1910.

Report No. 691 of the Senate Judiciary Committee of the Sixty-First Congress, Second Session, referring to compensation of receivers, is quoted in section 2115, of Remington on Bankruptcy, second edition. In this report, it is stated:

"As to the matter of additional compensation for the conducting of *the* business by the receiver or trustee, the act of 1898, as originally passed, gave no such additional compensation. This was an injustice, because the conducting of *the* business of the insolvent is frequently necessary, particularly when adjudications are contested or when the assets consist of an active business which can be best sold as a going concern." (Italics ours.)

This Senate Report throws light upon the legislative intent. It is apparent that Congress realized that there might be situations where it was necessary to conduct the business of a bankrupt and keep it going so far as practicable. Actual practice has developed situations where, although the business as a whole may not be sold, yet the business is conducted substantially, in the manner (although, perhaps, not in volume) in which such a business would be conducted in ordinary course prior to bankruptcy.

Each case necessarily must stand upon its own facts. It is, however, clear that where, from the very nature of the business, it is not possible for the receiver or trustee to continue to conduct the business in which the bankrupt was engaged, the statute does not authorize additional compensation. Such a case is that at bar. Quite irrespective, therefore, of the value of the services of the receiver or trustee, as the case may be, and of the satisfactory results which he may attain by able administration, our view of the statute is that it has not conferred upon the bankruptcy court the power to allow additional compensation in a case such as this.

There are many statutes relating to taxation, the right of corporations to do business, and to other subjects where the question of what is "doing business" has arisen; but the construction of such statutes is always solved by the particular subject-matter with which they deal, and reference to cases involving the construction of such statutes is not helpful in this case, where it seems plain to us that the amendment of 1910 was intended to include only those cases where the receiver could conduct and was authorized to conduct the business of the bankrupt, if, from the nature of the case, the business was of a character susceptible of being conducted by a receiver.

On the ground, therefore, that the District Court had no power to award the compensation asked for, the order is affirmed, without costs.